UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAN REED, Petitioner, v. LYDIA HENSE, Respondent. | 1:06-CV-01757 OWW JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Petitioner Jan Reed ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at North Kern State Prison in Delano, pursuant to a judgement of the Madera County Superior Court. (Pet. at 2). Petitioner was convicted by a jury on February 19, 2003, of second degree murder (Cal. Penal Code § 187) and discharging a firearm in a grossly negligent manner (Cal. Penal Code § 246.3). (Answer at 1). The jury further found as true sentence enhancements for the use of a firearm (Cal. Penal Code §§ 12022.53(b)-(d) and 12022.5(a)(1)), resulting in an aggregate term of forty years to life. (Pet at 2; Resp't Answer at 1).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. Petitioner also filed a habeas petition with the appellate court, seeking relief on the grounds that trial counsel provided ineffective assistance. (Pet. at 4). The state appellate court affirmed Petitioner's conviction in a reasoned opinion issued on January 13, 2005. (*See* Lod. Doc. 5). On that same day,

the appellate court also issued an unpublished opinion denying the petition for writ of habeas corpus. (Lod. Doc. 8). The state appellate court expressly incorporated the reasoning contained in its opinion affirming Petitioner's conviction into its denial of Petitioner's habeas petition. (Id; Resp't Answer at 2).

Petitioner submitted a petition for review with the California Supreme Court, which was summarily denied on April 13, 2005. (Pet. at 3; Lod. Doc. 7). Petitioner subsequently filed a petition for writ of habeas corpus with the California Supreme Court on March 10, 2005. (Resp't Answer at 2). The California Supreme Court summarily denied the habeas petition on November 15, 2006. (Lod. Doc. 9).

On December 6, 2006, Petitioner filed the instant federal petition for writ of habeas corpus, to which Respondent filed an answer on October 25, 2007. On November 19, 2007, Petitioner filed a traverse to the Respondent's answer.

On February 6, 2009, the Court ordered an evidentiary hearing be conducted on two issues. The hearing was held on September 10, 2009. At the conclusion of the hearing, the Court ordered Petitioner to submit a brief within sixty days of Petitioner's receipt of the hearing transcript and Respondent was ordered to file a reply brief within sixty days thereof. Petitioner filed the post evidentiary hearing brief on December 7, 2009; Respondent filed the reply brief on February 5, 2010.

## FACTUAL BACKGROUND[1]

### A. Prosecution Evidence

> At 9:00 a.m. on October 12, 2001 Judy Reed picked up defendant at the mobile home in Coarsegold that he shared with Hendrika Anderson. Defendant was going to fix a fence at Judy's house. On the way to Judy's house, they stopped at a mini-mart where defendant bought two cans of beer. After examining the fence, they traveled to a store in Oakhurst and ordered some fence stakes. On the way back to Judy's house, they stopped at the mini-mart again and defendant purchased two or three more cans of beer. Defendant drank the beers while conversing with Judy. Around noontime, they returned to the store and picked up the stakes. On the way back to Judy's house they stopped at the mini-mart a third time. Judy paid defendant $20 and he bought a six-pack of beer. They returned to Judy's house and defendant fixed the fence. Afterward, he drank some more beer. He told Judy that he wanted to

[1] These facts were derived from the California Court of Appeal's opinion issued on January 13, 2005. (*See* Lod. Doc. 5.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

go deer hunting on Everett's property. Judy agreed to drive him there.

On the way to Everett's property, they stopped at defendant's residence so that he could pick up his Marlin 30-30 rifle (the rifle) and some ammunition. The rifle was stored in a leather case with defendant's first name engraved on it. Next, they stopped at a Texaco station so that defendant could pay a small debt. The clerk gave defendant the written IOU that had memorialized the obligation. Hendrika saw defendant at the Texaco station. She could tell that he had been drinking "but he was not like fall-down drunk."

At approximately 2:00 to 2:15 p.m., Judy dropped defendant off in front of the mobile home on Everett's property in which Everett lived, together with roommate Douglas B. and Douglas's school-aged daughter. Defendant was carrying the rifle when he got out of the car. Judy handed him the ammunition and the two or three remaining beers. Judy said that defendant was "weaving a little" but he was not "stumbling over as he walked," and his speech was not slurred when she left him.

Meanwhile, Douglas had gotten his daughter ready for school that morning and had arrived at work at Yosemite Smog and Electric by 7:00 a.m. Everett stayed home all day because he was not feeling well. He telephoned his sister, Benny Leininger, at 12:30 p.m. and left a message on her answering machine. He had a telephone conversation with a nephew between 1:00 p.m. and 2:00 p.m. Benny returned home at 3:30 p.m. and immediately telephoned Everett. He did not answer the telephone. She continued telephoning him every 15 or 20 minutes but he never answered.

Douglas and his daughter returned home at 5:45 p.m. When Douglas entered the living room, he saw Everett sitting in a recliner in front of the television set. There was a towel over his face. Douglas called out to Everett. When he did not respond, Douglas approached him and immediately saw that he was dead. Douglas took his daughter outside and called the police. Then he reentered the residence and took a .357 magnum handgun and some Vicodin that belonged to Everett. (Later, investigators asked Douglas about the handgun and he gave it to them.)

Madera County Sheriff's Deputy Brian Cunnings arrived. He saw that Everett had been killed by a single gunshot wound to the face. Everett's body was somewhat stiff and there was blood on his chest. He had a bottle of water clutched in his hand that was spilling into his lap. It is likely that the murder weapon was close to the skin surface when it was fired.

Deputy Cunnings found a pair of glasses with one lens missing and a spent rifle cartridge next to the recliner where Everett was sitting when he was shot. There was a bullet hole in the recliner that matched the downward trajectory of the bullet and there was a bullet hole near the bottom of the wall with fibers from the recliner in it. A bullet was extracted from the hole in the wall. Subsequent ballistics testing revealed that the spent cartridge had been fired by the rifle. The bullet is consistent with having been fired by a Marlin 30-30 rifle, but it could not be positively identified as having been fired by the rifle.

During a perimeter search of Everett's property, a pack of Marlboro Light brand cigarettes and a handwritten IOU, later identified as the one that had been returned to defendant at the Texaco station, were found near a fence line.

Defendant telephoned Judy at approximately 6:30 to 7:00 p.m. He said, "You didn't take me anywhere. Drop me off anywhere. Haul me around." He also said, "Everett is dead." Defendant did not say that he had shot Everett or that he had killed him. Judy asked defendant where he was and he replied that "he was home." It takes approximately 30 minutes to drive from Everett's mobile home to defendant's residence.

When Madera County Sheriff's Detectives Hadley Raymond Kern and Darin McMechan told Everett's ex-wife that he was dead, they "receive[d] some information regarding the possibility of the defendant being involved" in the homicide.

Defendant's mobile home was searched. The rifle was found in its case outside

on the ground next to a propane tank that was contained within a wood enclosure. The rifle was loaded with five of a possible six rounds of Remington brand ammunition.

Three fingerprints were found on the rifle. One of the prints was identified as belonging to defendant; the other two could not be positively identified.

Detectives Kern and McMechan interviewed defendant. Defendant told them that he was an alcoholic and that he often suffered blackouts. He remembered fixing Judy's fence that morning but he could not recollect anything that happened afterward. He believes "that he got home before dark." The last time he had been at Everett's residence was a year ago. He admitted that the rifle belonged to him. He did not remember firing it for the past week.

**B. Defense Evidence**

The defense theory was that someone else, possibly Douglas, killed Everett, either using the rifle or an identical weapon. Defense counsel, Thom Snyder, summarized the defense as follows: "I didn't do it, and I don't know what I did because, in essence, I was blacked out." The defense relied heavily on the People's absence of a motive for the homicide.

Flint Tompkins is a drug and alcohol counselor. He believes that defendant is a chronic alcoholic. Chronic alcoholics often suffer from blackouts. A blackout is a "blank spot" in a person's memory in which he has no recollection of his activities during a period of time. Blackouts can occur even after ingesting only one or two drinks.

Douglas smokes Marlboro Light brand cigarettes. Defendant smokes Marlboro Red brand cigarettes.

Douglas told defense investigator Steven Rosenlind that Everett owned a 30-30 rifle and that it was missing. Douglas thought the police had it.

One of Douglas's work responsibilities is to test drive vehicles occasionally. He does not record the time spent away from the shop during these test drives. He does not remember whether he test drove any vehicles on October 12, 2001. He did not go home that day until after work, when he found Everett's body.

(Lod. Doc. 5 at 2-6.)

## DISCUSSION

### I. Jurisdiction

A person in custody pursuant to a state court judgment may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner's custody arose from a conviction in the Madera County Superior Court. As this judicial district encompasses Madera County, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a state court convicted and sentenced

the petitioner if the state "contains two or more Federal judicial districts").

**II. AEDPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), *overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-27 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams v. Taylor*, 529 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially

indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Petitioner raised some of his claims (portions of Ground One and Ground Five) through a direct appeal and for these claims, the California Court of Appeal was the last state court to issue a reasoned opinion; thus, the Court analyzes whether the appellate court's decision is an objectively unreasonable application of federal law. Petitioner concurrently raised the remainder of his claims through petitions for wit of habeas corpus to the California Supreme Court and the California Court of Appeal, which issued summary denials on those claims. For those claims, the Court conducts an independent review of the record to determine whether the summary denial was an objectively unreasonable application of federal law.

## **III. Review of Petitioner's Claim**

Petitioner alleges that his constitutional rights were violated by: (1) ineffective assistance of trial counsel; (2) an equal protection violation; (3) insufficient evidence was presented at trial to support Petitioner's conviction; (4) the trial court improperly applied felony murder rule; and (5) the trial court's failure to instruct on a lesser offense.

### ***A. Ground One: Ineffective Assistance of Counsel***

In his first ground for relief, Petitioner contends that counsel was ineffective for various reasons. Generally, an allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a

strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Under the prejudice prong of *Strickland*, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

***1. Conflict of Interest***

Petitioner contends that there existed a conflict of interest as counsel had undertaken to represent a witness, Hendrika Anderson, in an unrelated civil proceeding. (Pet'r's Traverse at 13-14.) Petitioner contends that counsel advised Ms. Anderson to invoke her right against self-incrimination at Petitioner's trial. (Id.)

The Sixth Amendment guarantee of effective assistance of counsel encompasses representation by counsel free from conflicts of interest. *See Strickland*, 466 U.S. at 692; *Lewis v. Mayle*, 391 F.3d 989, 997 (9th Cir. 2004) (citing to *Wood v. Georgia*, 450 U.S. 261, 271 (1981) in stating "[t]he Sixth Amendment ensures that a criminal defendant has the right to representation that is free from conflicts of interest and the assistance of counsel whose loyalties are not divided"); *see* also *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). "In order to establish a violation of the Sixth Amendment [based on a conflict of interest] a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Upon a showing that counsel's performance was adversely affect, prejudice is presumed because the "assistance of counsel has been denied entirely or

during a critical stage of the proceeding." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). "Under this standard, an actual conflict is a conflict that affected counsel's performance-as opposed to a mere theoretical division of loyalties." *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005) (citation marks omitted) (noting that actual conflict is not something separate and apart from adverse affect under the *Sullivan* standard); *see also Mickens*, 535 U.S. 162, 172 n.5 (2002) ("An 'actual conflict' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance"). The Supreme Court noted in *Sullivan* that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Sullivan*, 446 U.S. at 349-350 (citations omitted); *see also Sanders*, 21 F.3d at 1452 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978) in stating that "[o]nce an actual conflict has been demonstrated, prejudice is presumed since the harm may not consist solely of what counsel does, but of 'what the advocate finds himself compelled to *refrain* from doing, not only at trial but also' during pretrial proceedings and preparation") (emphasis in original). In *Lewis v. Mayle*, 391 F.3d at 997-998, the Ninth Circuit found a conflict of interest existed where the attorney's previous representation of a witness adversely affected the defense presented at trial. The *Lewis* court found significant the fact that trial counsel refrained from eliciting evidence on at least three points, including an instance in which counsel failed to present evidence discrediting the witness with information obtained from the attorney's previous representation of the witness.

On September 10, 2009, the Court conducted an evidentiary hearing on this matter, taking testimony from Ms. Anderson, defense counsel, Thom Snyder, and defense investigator Stevan Rosenlind. After considering the testimonies of the witnesses, the Court finds that Petitioner has not established that he is entitled to habeas corpus relief on the theory this his attorney had a conflict of interest. First, the Court does not find that a theoretical division of loyalty existed. Petitioner's case presented three possible scenarios for a division of Mr. Snyder's loyalty between Ms. Anderson and Petitioner: 1) Ms. Anderson was paying Petitioner's legal fees; 2) Ms. Anderson was represented by Mr. Snyder in an unrelated civil matter; and 3) Mr. Snyder was concurrently representing Ms. Anderson in Petitioner's criminal matter. At the evidentiary hearing, Ms. Anderson testified that she had never entered into any agreement to pay Mr. Snyder's legal fees, thereby disputing the first

theory. Ms. Anderson, and Petitioner, admit that Mr. Snyder did not represent Ms. Anderson in a separate legal proceeding. Petitioner contends that Mr. Snyder was concurrently acting as Ms. Anderson's attorney in Petitioner's criminal matter but this assertion is not supported by either Mr. Snyder's or Ms. Anderson's testimony. Assuming that a theoretical division of loyalties existed, the Court does not find that Mr. Snyder's representation of Petitioner was adversely affected by any loyalty owed to Ms. Anderson. Mr. Snyder testified that he did not solicit testimony from Ms. Anderson regarding her presence at the crime scene because he did not believe she would be a credible witness. The Court's own observation of Ms. Anderson's demeanor and testimony at the evidentiary hearing supports Mr. Snyder's estimation that Ms. Anderson was not a credible witness. Thus, the Court does not find that Mr. Snyder's representation of Petitioner was adversely affected by Mr. Snyder's alleged loyalty to Ms. Anderson. Consequently, Petitioner is not entitled to habeas corpus relief on this ground.

***2. Failure to Investigate***

The Court finds there is a strong argument that Mr. Snyder's failure to conduct any investigation in the months leading up to trial deficient. The Court find credible Mr. Rosenlind's testimony that Mr. Snyder stopped responding to his attempts at communication sometime in late September and early October 2002. (Tr. Evidentiary Hearing, at 29.) Mr. Rosenlind, the defense investigator at trial, testified that the investigation was only partially completed when communication from Mr. Snyder ceased. (Id. At 34.)

However, *Strickland* requires both deficiency and prejudice stemming from the deficient performance. Here, Petitioner argues that had counsel been diligent in pursuing the defense investigation, counsel would have uncovered the following information–that the victim had a gun similar to the one he was shot with, that Judy Reed, a witness at trial, had been drinking on the day of the crime, and that Petitioner and the victim had an amiable relationship. First, the majority of this evidence was known to Mr. Snyder as Mr. Snyder questioned a witness, Doug Bratton, on the amiable nature of Petitioner's relationship with the victim and commented on the similar gun earlier in the proceedings. More importantly, though, the Court does not find this evidence is sufficient to undermine confidence in the verdict against Petitioner. The evidence that Petitioner and the victim

had a good relationship is not exculpatory and does nothing to negate the theory that Petitioner shot the victim. The evidence that Judy Reed was impaired due to alcohol consumption is only tangentially relevant. Ms. Reed's testimony established two key points–that Petitioner was at the scene of the crime near the time of the crime and that Petitioner knew of the victim's death prior to being informed by the police. There is no dispute regarding Judy Reed's testimony that she dropped Petitioner off at the victim's residence. Evidence that she might have been impaired earlier in the day does not implicate her perception of events that evening when she received the call from Petitioner. Similarly, the Court finds Petitioner's argument that Jerry Reed's testimony that a similar rifle as the murder weapon was owned by the victim would have undermined the outcome of the trial unpersuasive. First, the probative value of the testimony is undermined by the fact that Jerry Reed is Petitioner's brother. Additionally, this evidence would have been admitted to prove third party culpability, and specifically that Doug Bratton used the weapon to murder the victim. This defense was rejected by the jury and the Court does not find that testimony from a biased source that the victim had a similar gun would have resulted in a different outcome. In sum, Petitioner has failed to establish that a longer period of investigation would have resulted in evidence sufficient to undermine the verdict that was reached against him.

***3. Failure to Present Plea Offer***

Although failing to communicate a plea offer would likely constitute ineffective assistance of counsel, *see Nunes v. Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003), Petitioner has not provided evidence from which this Court could conclude that counsel failed to relay any offers. The prosecutor averred under penalty of perjury that "no offers of any kind were extended to Mr. Snyder for relay to the Defendant." (CT at 266-267.) Additionally, Petitioner has not demonstrated that there was a reasonable probability that he would have accepted the plea offer to avoid a trial, especially as Petitioner has continued to maintain his innocence of the crime. *See Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) *see also Jones v. Wood*, 114 F.3d 1002, 1012-13 (9th Cir. 1997).

\\\

\\\

***4. Misrepresentation to the Court***

Petitioner contends that counsel misrepresented to the state trial court the severity of his medical condition in order to gain a continuance of four months. (Pet'r's Traverse at 9-10.) The California Court of Appeal found that Petitioner failed to demonstrate any prejudice resulting from the four month continuance. The appellate court stated that:

> In any event, we do not believe that a single four-month trial continuance demonstrates abandonment of the defense. Defendant also failed to show that he was prejudiced by the four-month continuance. During the new trial hearing, the court directly asked defendant how the delay had prejudiced his case. Defendant's answer was nonresponsive. He said, "I'm saying that I was dealt a dirty hand with that man because I feel that he lied to me then. He never said anything about jury instructions up here. When he told me, I started asking him in the courtroom that day when we are sitting at the table, he said, 'Oh, don't even worry about that. We're not even going there.' Well, we went there." Brashear represented defendant at this hearing. He did not argue that defendant was prejudiced by the delay. Defendant's declaration supporting the new trial motion did not allege any specific detriment caused by the continuance.
>
> Defendant has not shown that there was exculpatory testimony or other meaningful evidence available to him that Snyder failed to present. He acknowledges that, "he could not explain how his bullet was the one that passed through the dead man's skull," and that "[t]here is no certainty [a viable defense] could be successfully generated by hard work." Defendant complains about the lack of additional expert testimony, but fails to explain how such testimony could have benefited his case. His complaint concerning Snyder's failure to effectively question Hendrika fails because the record shows that Hendrika asserted her constitutional Fifth Amendment protection against self-incrimination at trial. In sum, defendant did not show there was a viable defense available that Snyder failed to present or demonstrate that Snyder made substantial legal or tactical errors. Defendant merely speculates that additional investigation and witnesses would have been helpful.
>
> Furthermore, defendant cannot overcome the overwhelming proof of his guilt. The People produced compelling evidence establishing that defendant murdered Everett by shooting him in the head at close range. They proved that defendant was at Everett's home near the time of death with the murder weapon. Shortly after the killing, the rifle was found hidden outside defendant's residence and his fingerprint was on it. Defendant demonstrated a consciousness of guilt when he attempted to conceal his presence on Everett's property by lying to the police and by telling Judy to lie. Also, he inexplicably knew that Everett was dead when he telephoned Judy. Defendant's third party culpability defense was not credible because there was not any significant physical evidence indicating that an unknown person had entered the mobile home and fired the fatal shot and because Douglas, the prime alternative suspect, was at work when Everett was killed.

(Lod. Doc. 5 at 14-15.)

The Court does not find this decision to be an objectively unreasonable application of *Strickland*. As noted above, in order to succeed on an ineffective assistance of counsel claim, Petitioner must establish that counsel's misrepresentation prejudiced him. Petitioner has failed to meet the *Strickland* standard as the defense investigator asserted that the defense was not ready to go

to trial when counsel requested the continuance in September 2002. Thus, assuming *arguendo* that counsel did misrepresent to the court the cause for a continuance, the continuance did not prejudice Petitioner as it provided additional time for the defense.

***5. Failure to Develop Coherent Defense***

Petitioner alleges that trial counsel was deficient for failing to develop a coherent defense. The California Court of Appeal found that trial counsel "developed a coherent third party culpability defense theory." (Lod. Doc. 5 at 13.) The record does reveal that trial counsel commented to the court during preliminary proceedings, outside the presence of the jury, that the defense was "I didn't do it and I don't know what I did because, in essence, I was black out," thereby suggesting possible conflicting defenses. RT at 2718. However, the record of the trial support's the appellate court's finding that counsel produced a coherent third party culpability defense. During closing, counsel noted that expert testimony produced at trial about Petitioner's alcohol induced blackouts was to rebut inconsistencies in Petitioner's statement to the police. (RT at 3392.) Thus, this is not a case where counsel presented conflicting defenses of third party culpability and intoxication to negate intent. Rather, counsel argued throughout the trial that a third party, Doug Bratton, was the responsible culprit. (RT at 2447-2450, 3379-3388.) Thus, the Court finds that the state appellate court's decision was not an objectively unreasonable finding of fact and Petitioner is not entitled to habeas corpus relief on this ground.

***6. Cumulative Effect***

In his traverse, Petitioner raises the argument that the cumulative effect of counsel errors prejudiced his defense. For the reasons articulated above, the Court finds Petitioner's argument unpersuasive. Petitioner is not entitled to habeas corpus relief on this ground.

***B. Ground Two: Equal Protection***

Petitioner contends that the California Court of Appeal's adjudication of his case constitutes unequal treatment in violation of his constitutional rights. (Pet. at 5; Traverse at 18-20.) This claim was raised to the California Supreme Court in a petition for writ of habeas corpus, which was summarily denied. (Lod. Doc. 8; Resp't Answer at 14.) As the California Supreme Court's summary denial was the only state court decision on this claim, the Court conducts an independent

review of the record to ascertain whether the state court's denial was contrary to or involved an unreasonable application of Supreme Court precedent. *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

"The equal protection clause directs that 'all persons similarly circumstanced shall be treated alike.'" *Mayner v. Callahan*, 873 F.2d 1300, 1301 (9th Cir. 1989) (citing *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). Where a petitioner fails to allege any facts establishing that the laws were applied unevenly in a systematic manner or that he was treated different than similarly situated individuals, the petitioner fails to state an equal protection claim. *Caswell v. Calderon*, 363 F.3d 832, 837-838 (9th Cir. 2004) (affirming district court's conclusion that petitioner's equal protection claim was futile where petitioner failed to argue either that the parole board drew any distinctions among similarly situated prisoners, treated petitioner differently because of membership in a protected class, or unevenly applied the law in a systematic manner); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991).

Here, Petitioner alleges that he was treated unequally by the California Court of Appeal. However, Petitioner's equal protection claim merely alleges that the state court's adjudication of his ineffective assistance of counsel claim was erroneous not that Petitioner was treated differently. Petitioner fails to alleges that the appellate court unevenly applied the laws or identify any distinct treatment from similarly situated individuals. Thus, the Court finds Petitioner has failed to establish an equal protection claim that would entitle him to habeas corpus relief.

***C. Ground Three: Sufficiency of the Evidence***

Petitioner contends that his Fifth and Fourteenth Amendment rights were violated by insufficient evidence to support his conviction for second degree murder and discharge of a firearm in a grossly negligent manner. Specifically, Petitioner contends that the state failed to produce evidence that Petitioner shot the victim. (Traverse at 20-22.) Petitioner presented ths claim to the California Supreme Court, which summarily denied the claim. (Resp't Answer at 17; Lod. Doc. 9.) As the California Supreme Court's decision was the only state court decision adjudicating the merits of this claim, the Court conducts an independent review of the record to ascertain whether the state court's denial was contrary to or involved an unreasonable application of Supreme Court precedent.

*See Delgado*, 223 F.3d at 981-82.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting that under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson* was objectively unreasonable). Thus, a state prisoner is only entitled to habeas relief on this ground where no rational trier of fact could have found proof beyond a reasonable doubt based on the evidence adduced at trial. *Jackson*, 443 U.S. at 324; *see McDaniel v. Brown*, 130 S. Ct. 665, 666 (2010) (per curiam).

Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Lewis v. Jeffers*, 497 U.S. 764, 781 (1990); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam) (quoting *Jackson*, 443 U.S. at 319) (stating "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the prosecution'"). Where the record supports conflicting inferences, a federal habeas court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. Additionally, a jury's credibility determination is "entitled to near-total deference under *Jackson*," *Bruce*, 376 F.3d at 957, as assessing the credibility of witnesses is generally beyond the scope of a *Jackson* review, *Schlup v. Delo*, 513 U.S. 289, 330 (1995). Lastly, a federal habeas court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to a state

court's determinations of legal questions or to mixed questions of law and fact, a state court's factual findings underlying its conclusions on mixed issues are accorded a presumption of correctness. *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004); *see also Sumner v. Mata*, 455 U.S. 591, 597 (1982) (per curiam) (holding that the questions of fact that underlie mixed questions are governed by the presumption contained in 28 U.S.C. § 2254).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Here, Petitioner argues there was insufficient evidence to support a findings that Petitioner fired the gun, which was required for Petitioner's conviction of second degree murder and discharge of a weapon in a grossly negligent manner. Petitioner's challenge is aimed specifically at the circumstantial nature of the evidence against him. As the Ninth Circuit has noted, "[c]ircumstantial evidence and reasonable inferences drawn from it may properly form the basis of a conviction." *Schad v. Ryan*, 606 F.3d 1022, 1038 (citing *United States v. Jackson*, 72 F.3d 1370, 1381 (9th Cir. 1995)); *see also Jackson*, 443 U.S. at 325 (finding that circumstantial evidence can support a finding of necessary intent for first degree murder). Here, the circumstantial evidence would permit a rational fact finder to conclude that Petitioner shot the victim. Specifically, witness testimony established that Petitioner was at scene of the crime, the victim's residence, near the time of the victim's death. A rifle found at Petitioner's residence was consistent with the weapon used to shoot the victim and the rifle bore Petitioner's finger print. A witness testified that Petitioner informed her the victim was dead and told her not to tell the police that she had dropped him off at the victim's residence. Additionally, as the state court noted, the thirty party culpability evidenced was not credible as the person Petitioner claimed was the perpetrator had an alibi. Thus, there was sufficient evidence upon which a rational trier of fact could conclude that Petitioner shot the victim and therefore Petitioner is not entitled to habeas corpus relief on this ground.

***D. Ground Four: Improper Application of Felony Murder Rule***

In his fourth ground for relief, Petitioner contends that the state trial court misapplied the felony murder rule to defeat Petitioner's defense of voluntary intoxication, which resulted in violations of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights. Petitioner fails to explain

how the state court misapplied the felony murder rule. (*See* Traverse at 23; Pet. at 6.) Rather, Petitioner references the amendment of charges to add a violation of California Penal Code section 246.3 (discharge of a firearm in a grossly negligent manner). Presumably Petitioner is arguing that the trial court's instruction to the jury that section 246.3 is a predicate offense on which a second degree felony murder verdict could be based was erroneous as it allowed the jury to presume malice.[2] However, there is no clearly established federal law that would prohibit this rule. *See Leon v. Felker*, __ F.Supp.2d __, 2010 WL 3476680, *13 (N.D. Cal. Sep. 3, 2010) (noting that Supreme Court has expressed approval for felony-murder statutes). Thus, Petitioner cannot establish that the application of a felony murder rule to second degree murder violates his constitutional rights and that he is entitled to habeas corpus relief on this ground.

***E. Ground Five: Lesser Included Offense Instructions***

In his fifth ground for relief, Petitioner argues that the trial court's failure to give certain instructions violated his constitutional rights. In his petition, Petitioner takes fault with the trial court's failure to instruct on lesser offenses.[3] (Pet. at 6.) The California Court of Appeal rejected this argument, finding that there was no evidence to support a jury instruction on manslaughter. (Lod. Doc. 5 at 8.)

As an initial matter, the Court notes that in a non-capital case, such as the one presented here, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Bashor v. Risley*, 730

---

[2]It is also possible Petitioner is arguing that the instruction was erroneous as discharge of a firearm could not serve as a predicate offense to felony murder under the merger doctrine. The California Court of Appeals found the issuance of a second degree felony murder instruction was not erroneous pursuant to the California Supreme Court's decision in *People v. Robertson*, 34 Cal. 4th 156 (2004). (Lod. Doc. 5 at 10.) The *Robertson* court held that merger doctrine did not bar a jury instruction on second degree felony murder as a violation of section 246.3 may serve as the predicate offense for liability under second degree felony murder. *Id*. at 160. The Court recognizes that this ruling has since been overruled by *People v. Chun*, 45 Cal. 4th 1172, 1178 (2009), which found that where the underlying felony is assaultive in nature, the felony merges with the homicide and cannot be the basis for a second degree felony murder instruction. However, the existing law at the time of Petitioner's conviction was *Robertson*. *See Chun*, 45 Cal. 4th at 1198-99. As *Chun* has not been made retroactively applicable, Petitioner cannot obtain relief under the theory that the second degree felony murder rule was erroneous under the merger doctrine.

[3]In his traverse, Petitioner seemingly raises another argument–namely that his right to a fair trial, guaranteed in the Fifth, Sixth, and Fourteenth Amendment, was violated by the trial court's failure to instruct on the legal consequences of intoxication and its negation of express malice. (Traverse at 23.) As the Court did not give Petitioner leave to amend his petition, the Court presumes that Petitioner's argument in his traverse is the same as his argument in the petition.

F.2d 1228, 1240 (9th Cir. 1984) (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) (*per curiam*)); *see also Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000) (citing *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998)) (finding that a state court's failure to instruct on a lesser included offense is generally not cognizable in a federal habeas proceeding). While the United States Supreme Court, in *Beck v. Alabama*, 447 U.S. 625, 638 (1980), has held that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the *Beck* court also expressly reserved the question of whether due process mandates the application of the same right to non-capital cases. *See Beck*,447 U.S. at 638, n.7; *Solis v. Garcia*, 219 F.3d at 928. The right to have a jury instructed on a lesser included offense is not clearly established federal law in a noncapital case and consequently, the failure of a state trial court to *sua sponte* instruct on a lesser included offenses does not warrant habeas corpus relief. *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998); *Turner v. Marshall*, 63 F.3d 807, 813 (9th Cir.1995), *overruled on other grounds* by *Tolbert v Page*, 182 F.3d 677 (9th Cir.1999) (*en banc*) (finding the application of *Beck* to noncapital cases barred by *Teague v. Lane*, 498 U.S. 288, 299-300 (1989)); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) (*per curiam*).

The Ninth Circuit in *Solis* noted that there might exist an exception to this general rule for adequate jury instructions on a defendant's theory of defense. *Solis*, 219 F.3d at 929 (citing *Bashor*, 730 F.2d at 1240, but noting that *Wyndham*, 163 F.3d at 1106, mentioned no such exception to the general rule). Assuming *arguendo* that Petitioner possesses a federal constitutional right to receive adequate instructions on his theory of the case, the state appellate court's conclusion that the evidence did not warrant such an instruction was not objectively unreasonable. *See id.* (finding habeas petitioner not entitled to relief even under the exception where evidence to support lesser included offenses was not substantial). The appellate court stated that:

> Defendant does not point to any evidence tending to show that the killing was either voluntary or involuntary manslaughter. There was no evidence introduced at trial tending to prove that the shooting was anything other than murder. There was no proof that Everett had provoked defendant. The record also lacks any evidence indicating that defendant had acted in the heat of passion or that he shot Everett in self-defense. Furthermore, neither party advanced a theory that would have been consistent with a manslaughter verdict. The People argued that the shooting was an intentional execution. The defense theorized that defendant was actually innocent; someone else, perhaps Douglas, had fired the fatal shot. Since no species of manslaughter is supported by the evidence or is consistent with the theories advanced

at trial, no sua sponte instructional duty arose.

(Lod. Doc. 5 at 9-10.)

The Court does not find this to be an objectively unreasonable application of Supreme Court precedent. The Court's review of the record reveals that there was not substantial evidence to support an instruction on manslaughter. Additionally, such an instruction was not warranted by the third party culpability defense presented by Petitioner at trial. Thus, the trial court did not bear a *sua sponte* duty to issue instructions for manslaughter and Petitioner is not entitled to habeas corpus relief for the trial court's failure to instruct on manslaughter.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: October 13, 2010** **/s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE